UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ALEKSANDAR      STEPANOVICH,
MONIKA MOZOLICOVA, and IVANA
KAVAJA[1],

      Plaintiffs,

v.                                      Case No: 2:14-cv-270-FtM-29MRM

CITY  OF  NAPLES,  FLORIDA,
KYLE BRADSHAW, Officer, and
STACY WALKER, Officer,

      Defendants.

---

## OPINION AND ORDER

This matter comes before the Court on review of defendants'
Motions to Dismiss, to Strike, and for a More Definite Statement
(Doc. #92) filed on September 3, 2015.  Plaintiffs filed an
Opposition to Defendants' Motion to Dismiss (Doc. #101) on
September 17, 2015.

Since the filing of the First Amended Complaint (Doc. #84),
plaintiffs have voluntarily dismissed defendants Chief Tom
Weshler, Officer Ryan Harp, Captain John Barkley, and Sergeant
Michael Herman.  (Docs. ## 103, 126, 191.)  Plaintiffs also

---

[1] Plaintiff Milan Uzunovic's claims were dismissed with
prejudice on June 24, 2015.  (Doc. #76.)

dismissed claims against Master Sergeant Michael O'Reilly with prejudice, who dismissed his counterclaim without prejudice. (Doc. #191.)  This leaves the City of Naples and the individual defendant Officer Kyle Bradshaw, and no counterclaims.

### I.

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted).  To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010).  This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani

v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011)(citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

## II.

Plaintiffs set forth events starting in the early morning of May 17, 2012, when defendant Officer Kyle Bradshaw of the City of Naples Police Department responded to a noise complaint at the fourth floor apartment of plaintiffs Aleksandar Stepanovich and Monika Mozolicova. Taking all the allegations as set forth in the First Amended Complaint (doc. #84) as true for purposes of the motion to dismiss, Bradshaw asked the individuals on the deck of the apartment to turn down the music, and demanded that Stepanovich come downstairs to speak with him after the music was off and the party was ended. When Stepanovich declined to come downstairs, Bradshaw left and requested backup. Upon return, the noise

complainant provided officers entrance into the common areas, and directed them to the apartment.

The officers knocked on the door, and Mozolicova and another individual complied and went downstairs with the officers to accept a notice to appear on the noise ordinance violation. Mozolicova and her friend returned to the apartment. A few minutes later, Bradshaw and another officer regained entrance to the building and spoke to the noise complainant about providing a sworn statement, and then once again sought out Mozolicova by knocking on the apartment door. When the friend opened the door, Bradshaw and another officer grabbed the friend from inside the apartment, pulled her into the hallway, and ripped her shirt in the process of arresting her. Bradshaw then kicked the apartment door open, entered without consent or a warrant, and attempted to grab and arrest Mozolicova.

After Bradshaw and the other officer (Harp) each admitted that they had no right to enter the apartment, and Bradshaw smashed the cellular telephone of Stepanovich when he tried to film what was happening, things escalated. Bradshaw arrested Stepanovich without resistance and took him into the hallway to be detained with the friend. Bradshaw re-entered the apartment to arrest Mozolicova, and followed her into the dark bedroom of Mozolicova's young daughter and closed the door. Bradshaw grabbed Mozolicova,

slammed her face into the windowsill causing her to bleed, and forced her to the floor to execute an arrest.  O'Reilly entered and helped detain Mozolicova with his knee in her back. Stepanovich, while still handcuffed, reentered the apartment to check on his wife and saw her with O'Reilly holding her down.  As he approached, Stepanovich was hit by a Taser and fell to the ground.  O'Reilly used it a second time while Stepanovich was on the floor.  O'Reilly and Bradshaw then hit and kicked Stepanovich while he was on the floor and still handcuffed.  Thereafter, Bradshaw took Mozolicova downstairs while she continued to bleed from her face.

Walker and another office arrived and entered the apartment. During the arrest of Mozolicova and Stepanovich, their guest Uzunovic had locked himself in the bathroom in fear for his safety, but Bradshaw and another officer broke through the door and arrested him too.  Bradshaw then arrested Kavaja, an overnight guest who had been staying in the young daughter's room, and placed her outside with the friend, and returned to the apartment to take Stepanovich downstairs and into the rear of a police vehicle.

In the police car, Stepanovich had difficulty breathing and requested medical assistance but to no avail.  Paramedics did attend to Mozolicova, and Harp refused to provide the name of Bradshaw when asked how all this could happen.  Mozolicova was

transported to Naples Community Hospital, and the others were transported to Naples Jail Center. At the Naples Jail Center, Stepanovich vomited several times and again requested medical attention. None was provided.

Each of the arrestees was charged with a third degree felony for resisting arrest with violence, and various misdemeanors. Bradshaw also claimed that he found an active INTERPOL warrant seeking to arrest Stepanovich for a homicide in Serbia, and made a sworn statement to that effect. Bradshaw and others told news agencies about the "valid and active warrant", and that extradition proceedings were ongoing. Employees of the City of Naples went further and disseminated the information to the Board of Directors for the apartment complex where Stepanovich and Mozolicova resided, and even provided a statement to the press confirming the facts of an outstanding INTERPOL warrant and a pending extradition. This was despite the fact that officers should have known that Stepanovich was a United States citizen and could not be extradited to Serbia, and that the validity of the warrant was unconfirmed. Bradshaw's sworn statement was later amended by hand to state that the INTERPOL warrant was unconfirmed and could take up to 10 days to verify. It was later verified that there was no warrant for Stepanovich out of Serbia, and naplesnew.com published an article stating that he was not actually an international fugitive. All

charges against Stepanovich were dismissed by the Court.  The prosecution declined to proceed against Mozolicova and Kavaja for the misdemeanors, but did move forward with the third degree felony for resisting arrest with violence, which were "second-in-time crime[s] not based on the lawfulness of the original arrest." Mozolicova and Kavaja pled no contest to a lesser misdemeanor charge to avoid potential deportation consequences.

As a result of the events, Stepanovich, Kavaja, and Mozolicova were terminated from their employment, their landlord terminated their lease, and their access to the private beach of Pinnacle was revoked.  On moving day, four officers appeared at the moving dock as they were loading their furniture.  The facts set forth in paragraphs 17 through 185, under the heading of General Allegations, are incorporated into each of the counts.

### III.

Counts I, II, III, V, VI, VII, XIV, and XIV are all claims against Bradshaw only.  Count V is brought by Mozolicova only, Count VIII is brought by Stepanovich and Mozolicova but not Kavaja, and Count XIV is brought by Stepanovich only.  Counts VIII, Count XI, and XIII are against both Bradshaw and the City of Naples.[2]

---

[2] Counts VIII and XIII were dismissed with prejudice.  (Doc. #199.)

Counts IX, IX[3], and XII are all claims against the City of Naples only.  Defendants seek to "dismiss Counts I and II", however the motion goes on to seek dismissal of the other counts.  The arguments are all addressed below.

### Bradshaw

Count I is a claim for invasion of privacy based on the initial entry into the home, Count II alleges false arrest upon the second entry into the home, and Count III alleges excessive force to effectuate the arrest of plaintiffs.  Count V[4] alleges a right to bodily integrity on behalf of Mozolicova only, Count VI asserts that evidence was fabricated by Bradshaw, Count VII alleges malicious prosecution under federal and state law, all pursuant to 42 U.S.C. § 1983 and the Fourth and the Fourteenth Amendments of the United States Constitution.  Count XIV alleges deliberate

---

[3] This Count appears twice, and it is likely that the second one should have been Count X.  (Doc. #84, p. 34.)

[4] Count IV was brought against Master Sergeant Michael O'Reilly only, who was voluntarly dismissed with prejudice. Therefore, this Count is deemed dismissed and warrants no further discussion.

indifference by Bradshaw for the failure to provide medical care to Stepanovich.

### Both Defendants

Count VIII alleges stigma plus defamation in violation of the Fourteenth Amendment, and on September 1, 2016, the parties filed a Notice of Stipulation to Dismissal (Doc. #199) of this count with prejudice. Count XI against Bradshaw and the City of Naples alleges "wrongful acts under state law", including false imprisonment, unlawful search, harmful or offensive contact, and invasion of privacy under a theory of *respondeat superior*. Count XIII alleges defamation against both Bradshaw and the City of Naples, but by Notice of Stipulation to Dismissal (Doc. #199), it was dismissed with prejudice.

### City of Naples

Count IX[5] against the City of Naples alleges a failure to adequately train and/or supervise based on an unconstitutional custom, policy, or procedure and deliberate indifference or malice. Count XII against the City of Naples alleges negligent hiring, supervision, and retention of Bradshaw and others.

---

[5] As previously stated there are two Count IXs. There is no identified Count X.

**IV.**

Defendants move for dismissal of Counts I and II but also present arguments as to the remaining counts, or in the alternative for a more definite statement, and to strike certain impertinent allegations.  Defendants also contend that the entire First Amended Complaint should be dismissed as a shotgun pleading.

The Eleventh Circuit Court of Appeals recently delineated the "four rough types or categories of shotgun pleadings" that have been filed since 1985:

> The most common type — by a long shot — is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint.  The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple Defendants without specifying which of the Defendants are responsible for which acts or omissions, or which of the Defendants the claim is brought against.

Id. at 1321-23.  Although the inclusion of all the general allegations is overly broad, the extensive facts listed therein are not vague or immaterial to *all* of the counts alleged.  Further,

even if plaintiffs committed the "rare sin" of asserting multiple claims against multiple defendants, this is now a nullity since most of the defendants have in fact been dismissed.  The motion will be denied on this basis.

Defendants also seek to strike certain paragraphs pursuant to Fed. R. Civ. P. 12(f) as irrelevant to the claims asserted, or otherwise impertinent or scandalous.  For example, the allegations against the friend, the allegations of an officer watching plaintiffs move out of their apartment, and the allegation of officers returning to the apartment to kick the dog.  (Doc. #92, pp. 23-24.)  The motion will be denied as the friend is part of the timeline of general facts and therefore she is not irrelevant.  The motion will be granted with regard to the fact that Bradshaw knocked the teeth out of the dog's mouth while unlawfully in the apartment, and the allegation that officers were sent to intimidate plaintiffs while they moved out of their apartment.  These facts have no relevance to any specific claim and clearly only serve to inflame.

### Count I

As to Count I, plaintiffs are clearly not asserting a constitutional claim of trespass as alleged by defendants, and are asserting a clearly established Fourth Amendment claim under McClish v. Nugent, 483 F.3d 1231, 1248 (11th Cir. 2007).  In the

First Amended Complaint, plaintiffs allege that Bradshaw entered into the apartment to effectuate the arrest, and admitted that his entry was unlawful, and then removed an individual from within the confines of the apartment while plaintiffs were within the zone of privacy of the apartment with the door closed. (Doc. #84, ¶¶ 187, 188, 191, 198.) Count I is limited to the forcible removal of the non-party friend only, and doesn't address the forcible removal of Mozolicova, a plaintiff in this case. A threshold issue before an individual can assert a Fourth Amendment challenge is "whether the individual maintains a legitimate expectation of privacy." United States v. McBean, 861 F.2d 1570, 1573 (11th Cir. 1988). It is not immediately apparent that the non-party friend of plaintiff could assert an expectation of privacy in the apartment, however if this fact is stricken[6], Count I still asserts a Fourth Amendment claim for the unlawful entry and invasion of the apartment of plaintiffs. The Court finds that Count I does state a plausible claim and will deny the motion to dismiss.

**_Count II_**

Defendants argue that Stepanovich's reentry into the apartment and approach of Officer O'Reilly constituted an act of

---

[6] Paragraph 191 states:  "Both officers admit that they unlawfully removed Miric, a guest and relative of STEPANOVICH, MOZOLICOVA, and KAVAJA from the Apartment."  (Doc. #84, ¶ 191.)

resisting arrest, and therefore Stepanovich cannot now claim false arrest.  Taking the allegations as true, plaintiffs allege that Bradshaw unlawfully entered into the apartment a second time to arrest Mozolicova without a warrant, exigent circumstances, or consent.  Bradshaw arrested Stepanovich inside the apartment without probable cause, handcuffed and detained him, and carried him outside of the apartment to turn Stepanovich over to the custody of Harp.  Bradshaw then reentered the apartment a third time, pursued Mozolicova through the house and into a bedroom to restrain her on the ground and arrest her without probable cause. Bradshaw then pursued Kavaja, who was attempting to use her cellular telephone.  Bradshaw smashed Kavaja's cellular telephone, arrested her without probable cause, and transported her outside. (Doc. #84, ¶¶ 206-216.)  The later reentry of Stepanovich into the apartment is not alleged in Count II.

Defendants fail to acknowledge that the First Amended Complaint alleges that the entry into the apartment to arrest Stepanovich was unlawful.  To support a conviction for resisting arrest without violence, "the State must prove: (1) the officer was engaged in the lawful execution of a legal duty; and (2) the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty."  C.E.L. v. State, 24 So. 3d 1181, 1185-86 (Fla. 2009).

Taking all the allegations in Count II as true, Bradshaw was not engaged in the lawful execution of his duty at the time, and there are no allegations that Stepanovich, by words or otherwise, obstructed or resisted the initial arrest.  Resisting arrest while in custody and after the initial arrest is still resisting of an arrest, but the underlying arrest must have been valid for a defendant to be guilty of resisting without violence.  See Miller v. State, 636 So. 2d 144, 151 (Fla. 1st DCA 1994) (distinguishing Grant v. State, 366 So. 2d 843 (Fla. 1st DCA 1979) and English v. State, 293 So. 2d 105 (Fla. 1st DCA 1974) where the court found that the offense of resisting arrest could not be supported if the underlying arrest was invalid).[7]  Plaintiff alleges false arrest for the initial arrest, and therefore the motion will be denied as to Count II.

### Count III

Defendants argue that the excessive force claim of Kavaja is due to be dismissed, and even an objectively reasonable officer would find that the allegations fail to rise to anything more than de minimis force.  Defendants do not seek to dismiss the claim as to Mozolicova or Stepanovich.

---

[7] The validity of the arrest will not serve as a defense for resisting with violence.  Id. (citing cases).

In a light most favorable to plaintiffs, they allege that Bradshaw used more force than was necessary to effectuate the arrest of each plaintiff.  Plaintiffs further allege that that the amount of force was not objectively reasonable because there was no probable cause to arrest plaintiffs who were within their home. Plaintiffs allege that Bradshaw caused "substantial injury" to Mozolicova and to Stepanovich.  (Doc. #84, ¶¶ 224-226, 227.) Plaintiffs argue that the force used against Kavaja was excessive based on the unlawful presence of the officers inside the home of her co-plaintiffs.

The parties agree that plaintiffs' claims are reviewed under an "objective reasonableness standard."  Crenshaw v. Lister, 556 F.3d 1283, 1290 (11th Cir. 2009) (citations omitted).  This objective standard is from the "perspective of a reasonable officer on the scene" and not "with the 20/20 vision of hindsight."  Id. (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).  The Court considers "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Graham, 490 U.S. at 396.  See also Mobley v. Palm Beach Cty. Sheriff Dep't, 783 F.3d 1347, 1353 (11th Cir. 2015).

In this case, there are no factual allegations of excessive
force against Kavaja.  Plaintiffs allege that Kavaja was startled
from a deep sleep, Bradshaw walked towards her and grabbed the
cellular telephone from her hand, Bradshaw "physically engaged
with" her to place her into custody, Bradshaw "disengaged with"
Kavaja and placed Kavaja outside the apartment on a bench, and
that Bradshaw used force to arrest her.  (Doc. #84, ¶¶ 49, 72-73,
111-113, 230.)  "Under this Circuit's law . . . a claim that any
force in an illegal stop or arrest is excessive is subsumed in the
illegal stop or arrest claim and is not a discrete excessive force
claim."  Bashir v. Rockdale Cty., Ga., 445 F.3d 1323, 1331 (11th
Cir. 2006).  Therefore, an excessive force claim based entirely on
the presence of an illegal arrest is not a discrete claim and fails
as a matter of law.  The motion will be granted as to Kavaja.

*Count V*[8]

Defendants argue that Mozolicova's bodily integrity requires
an element of sexual motivation, and does not rise to the level of
a constitutional violation as the contact was de minimis or
inadvertent as a result of Mozolicova resisting arrest.  In the
First Amended Complaint, plaintiffs allege that Bradshaw pursued

---

[8] Count IV was specific to O'Reilly and has been dismissed.
See supra pp. 7-8.

Mozolicova through the apartment to her daughter's dark bedroom and shut the door behind him.  Bradshaw then touched and grabbed her thighs and other parts of her legs.  Mozolicova told Bradshaw he was hurting her, and Bradshaw grabbed Mozolicova, turned her face down onto the bed, and slammed her face into the windowsill adjacent to the bed causing her to bleed.  While being handcuffed on the floor of the bedroom, Mozolicova's dress was up around her midsection and her legs and underwear were exposed.  (Doc. #84, ¶¶ 76-85, 92, 94.)  Plaintiffs further allege that Bradshaw intentionally and unlawfully violated Mozolicova's right to bodily integrity by exposing her naked to the view of himself and others without legal justification.  (Id., ¶ 255.)  Plaintiffs argue that the claim is precisely the kind of conscience shocking conduct that rises to the level of a substantive due process violation.

When asserting a substantive due process violation, plaintiff generally must prove that defendant's conduct "shocks the conscience." Daniel v. Hancock Cty. Sch. Dist., 626 F. App'x 825, 829 (11th Cir. 2015) (citations omitted).  "Force is conscience-shocking under the Fourteenth Amendment only where it is used maliciously and sadistically to cause harm." Id. at 830 (quoting Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009)).  Under this narrow standard, "even intentional wrongs seldom violate the Due Process Clause." Id. (quoting Doe v. Braddy, 673 F.3d 1313,

1318 (11th Cir. 2012) (citations omitted)).  The Court finds, the unintentional exposure of Mozolicova's underwear – but not of her genitalia - during the arrest, does not shock the conscience.  See Cty. of Sacramento v. Lewis, 523 U.S. 833, 846-848 (1998) (discussing benchmark for shocking of the conscience).  The motion to dismiss will be granted as to Count V.

### Counts VI & VII

Defendants argue that there is no distinct constitutional claim for malicious prosecution for fabrication of evidence and therefore Count VI should be dismissed for failure to state a claim, or as redundant.  Defendants further argue that there must be an allegation that the fabricated evidence caused the judicial proceeding against plaintiffs.  The motion will be granted in part.

Plaintiffs alleges that Bradshaw unlawfully entered the apartment to arrest Mozolicova, and fabricated conduct and evidence to protect himself from disciplinary action.  Bradshaw fabricated a claim that Stepanovich struck him during the arrest, and he fabricated multiple felonies and misdemeanors to retaliate causing hardship on plaintiffs Mozolicova and Kavaja who faced deportation if convicted of the fabricated felony charges. Stepanovich alleges that the fabricated charges also caused an enormous monetary hardship as he was forced to defend himself against false claims at great expense.  (Doc. #84, ¶¶ 264-269.)

Plaintiffs go on to allege that Bradshaw maliciously initiated criminal proceedings based on the fabricated charges, and that the termination of criminal proceedings against Stepanovich was a bona fide termination in Stepanovich's favor.  Two of the fabricated charges against Mozolicova and Kavaja were also dismissed for lack of probable cause, and there was no probable cause for the charges against plaintiffs.  Plaintiffs allege that one fabricated charge of resisting arrest with violence remained, but that it was not dependent on the lawfulness of the initial arrest.  (Id., ¶¶ 277-284.)  Plaintiffs allege that Bradshaw was the legal cause of the criminal proceedings, and that plaintiffs all suffered damages as a result of the original proceeding.

The parties agree as to the elements of a claim for malicious prosecution as set forth in Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004).  (Doc. #92, p. 13; Doc. #101, p. 11.)  The combined allegations also make clear that Bradshaw fabricated evidence, that the fabricated evidence was the legal cause of the resulting judicial proceedings against plaintiffs, and there was a bona fide termination of proceedings in favor of at least Stepanovich.  Plaintiffs also allege the absence of probable cause for the judicial proceedings, that Bradshaw acted with malice when he fabricated evidence, and that plaintiffs suffered damages.  It is therefore clear that plaintiffs have stated a claim for

malicious prosecution against Bradshaw, however that the fabrication of evidence is itself a malicious prosecution claim and that the counts are redundant.  See, e.g., Williams v. Miami-Dade Police Dep't, 297 F. App'x 941, 947 (11th Cir. 2008) (finding that the act of fabricating evidence, which resulted in the prosecutor's reliance on false and misleading evidence provided the "legal cause of the original prosecution").  The Court will grant the motion to dismiss to the extent that the counts will be considered as one combined count of malicious prosecution, and not separate counts of malicious prosecution.

**Counts IX[9] and IX[10]**

Defendants argue that plaintiffs failed to identify any policy or custom of the City of Naples that was the moving force of the alleged constitutional violations, and that paragraph 323 is incorrect as a matter of law because City Councilman Finlay is not the final policymaker for the City of Naples.

Plaintiffs allege that the City of Naples failed to adequately and properly supervise and train its police officers, especially as to the issue of noise ordinance violations and when it is

---

[9] As previously noted, there are two Counts labeled as IX and no Count X.  See supra p. 7, n.3; p. 8, n.5.

[10] Count VIII was voluntarily dismissed, see supra p. 7, n.2.

unlawful to enter a suspect's home for a misdemeanor offense. Plaintiffs allege that the unlawful policies, practices, and/or customs include falsely charging persons to cover up wrongdoing by its officers, encouraging unlawful detentions and arrests, and failing to investigate, discipline, or terminate officers after misconduct. Plaintiffs allege that the City of Naples demonstrated a deliberate indifference to the constitutional rights of plaintiffs. (Doc. #84, ¶¶ 305-310, 314, 316.) Plaintiffs go on to allege that Weschler as the Chief of Police and Finlay as City Councilman were both the final policymakers for the City of Naples. Plaintiffs allege that the City of Naples failed to adequately supervise and train its police officers as to the duty of care owed to the accused, the duty to investigate claims before making public statements, and to not defame the accused. Plaintiffs allege that the unlawful policies, practices, and/or customs include the dissemination of false or unverified information about active investigations to media outlets and others, and doing so maliciously or negligently. Plaintiffs allege that Weschler acted with malice when he sent an email to the City Manager containing defamatory statements that Stepanovich had a valid and active warrant for the crime of homicide in Serbia, and ultimately Finlay further disseminated the email to the group that managed the

apartment building occupied by Stepanovich and Mozolicova. (Id., ¶¶ 322-325, 326, 328, 330.)

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989). This "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 410 (1997). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Connick v. Thompson, 563 U.S. 51, 62 (2011). See also Gold v. City of Miami, 151 F.3d 1346, 1351 (11th Cir. 1998) ("without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise"). In this case, there are no allegations of actual or constructive notice by the City, only that there was a general failure to train based on the actions of Bradshaw. The conclusory allegation that the "action of" the city of Naples was the moving force behind plaintiffs' injuries is insufficient. (Doc. #84, ¶ 335.) The motion to dismiss will be

granted as to both counts[11], without prejudice, for failure to specify a policy, custom or procedure showing a pattern of constitutional violations.

**Count XI**

Defendants move for a more definite statement as to this count, which is entitled "Wrongful Acts Under State Law" and appears to encompass several claims within one count, and for the dismissal altogether of the invasion of privacy claim. Plaintiffs respond that the count reasserts the constitutional claims as state claims under a theory of *respondeat superior*.

Plaintiffs allege, in the alternative, that while acting in the course and scope of their employment, Bradshaw falsely imprisoned plaintiffs, unlawfully searched plaintiffs, committed a battery, and invaded the privacy of plaintiffs. Plaintiffs allege that the City of Naples is responsible for the wrongful acts of its employees under a doctrine of *respondeat superior*. (Doc. #84, ¶¶ 340-342.)

It is well established that a local government may not be sued under 42 U.S.C. § 1983 under a theory of vicarious liability, Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658,

---

[11] The Court notes that the counts are essentially duplicative as both raise the same issue of failure to train.

694 (1978), however it is unclear what state claims are relied upon and a more definite statement is required.  The motion will be granted without prejudice.

### Count XII

Defendants state that they are unable to determine what facts apply to the claims, and therefore they are unable to respond. This count is also brought "in the alternative", against the City of Naples only, alleging that it had a duty to screen, hire train, supervise, investigate, discipline and terminate Bradshaw, and that Bradshaw was negligent and breached his duty of care to plaintiffs.  (Doc. #84, ¶¶ 345-346.)  The count appears to be against the City of Naples, however the allegations are that Bradshaw and others breached the duty of care.  This appears to be another *respondeat superior* claim based on the negligence of individual officers, however there are no facts set forth as to how Bradshaw breached the duty of care.  The motion will be granted without prejudice.

### Count XIV[12]

Plaintiff Stepanovich seeks relief against Bradshaw alleging that he intentionally violated Stepanovich's right to receive

---

[12] Count XIII was voluntarily dismissed, see supra p. 7, n.2.

medical care in response to serious medical injuries that were apparent and complained about.[13] (Doc. #84, ¶ 362.) Stepanovich requested assistance from the paramedics because he was having difficulty breathing. Bradshaw told Stepanovich to "shut the fuck up you mother fucker, you fucking foreign piece of shit", and then he kicked and pushed Stepanovich in the rear seat of the police vehicle. Stepanovich again requested medical assistance but was not provided any prior to being taken to the police station. Once at the Naples, Jail Center, Stepanovich vomited several times, and again requested medical attention. Stepanovich alleges that he sustained injuries or damages as a result of defendants' callous indifference to his health and safety. (Id., ¶¶ 120-122, 126, 135-137, 370.)

"[T]he Fourteenth Amendment Due Process Clause, not the Eighth Amendment prohibition on cruel and unusual punishment, governs pretrial detainees." Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007). The standard is the same as that under Eighth Amendment's prohibition of cruel and unusual punishment. Id. Plaintiff must show a serious medical need, that Bradshaw

---

[13] Most of the count actually alleges that Herman and Weschler had notice and/or contributed to the wrongful acts of Bradshaw by failing to adequately investigate, supervise, or by acquiescing to or condoning the misconduct. (Doc. #84, ¶¶ 363-365.)

acted with deliberate indifference to his serious medical need, and that the injury was caused by defendant's wrongful conduct. Id.

"A medical need that is serious enough to satisfy the objective component is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (citation omitted). There are no allegations of a diagnosis or injury that could objectively be deemed a serious medical need. As a result, the Court finds that the motion to dismiss must be granted.

**V.**

Bradshaw asserts that he is entitled to qualified immunity with respect to a number of the claims without specifying which claims. Bradshaw also argues that plaintiffs have not sufficiently alleged a clearly established constitutional violation. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The Court finds that plaintiffs have adequately

alleged violations of clearly established constitutional rights. The motion will be denied.

Accordingly, it is now

**ORDERED:**

A.    Defendant's Motions to Dismiss, to Strike, and for a More Definite Statement (Doc. #92) are **GRANTED IN PART AND DENIED IN PART** as follows:

1. Paragraphs 138, 182, and 183 are stricken pursuant to Fed. R. Civ. P. 12(f);

2. Paragraph 191 is stricken and the motion is otherwise denied as to Count I;

3. The motion is denied as to Count II;

4. The motion is granted as to Kavaja as to Count III and otherwise denied;

5. The motion is granted as to Count V;

6. The motion is granted as to Counts VI and VII to the extent that they will be construed as a single claim of malicious prosecution;

7. The motion is granted as to Counts IX and X (labeled as another Count IX);

8. The motion is granted as to Counts XI and XII;

9. The motion is denied as moot with regard to Counts IV, VIII, and XIII; and

10.   The motion is granted as to Count XIV.

The motion is otherwise denied.

B.   Plaintiffs shall file a Second Amended Complaint within **FOURTEEN (14) DAYS** of this Opinion and Order consistent with the Court's rulings.

C.   As a Second Amended Complaint is anticipated, the deadline to file a Joint Pretrial Statement is extended to **on or before October 10, 2016.**

**DONE AND ORDERED** at Fort Myers, Florida, this __15th__ day of September, 2016.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of record

28