### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA

### CASE NO.: 2:14-CV-270-FtM-PAM-MRM

ALEKSANDER STEPANOVICH, MONIKA
MOZOLICOVA, and IVANA KAVAJA,

                    Plaintiffs,

vs.

CITY OF NAPLES, FLORIDA; OFFICER
KYLE BRADSHAW;

                    Defendants.

_____/

### DEFENDANT, KYLE BRADSHAW'S, RESPONSE IN OPPOSITION TO PLAINTIFFS' REQUEST FOR NEW TRIAL PURSUANT TO FRCP RULE 59, AND INCORPORATED MEMORANDUM OF LAW

      Defendant, KYLE BRADSHAW ("Bradshaw"), by and through his undersigned counsel, hereby files his Response in Opposition to Plaintiffs, ALEKSANDER STEPANOVICH ("Stepanovich"), MONIKA MOZOLICOVA ("Mozolicova"), and IVANA KAVAJA'S ("Kavaja") Request for New Trial Pursuant to FRCP Rule 59 (D.E. 379) and in support thereof states as follows:

### I.    INTRODUCTION

      This cause went to trial before a jury on February 6, 2017.  Throughout the course of trial the Court was called upon to render rulings on testimony, exhibits, and arguments, and there was a full presentation of evidence by Plaintiffs and Defendant. Proposed jury instructions were submitted by both parties to the Court and from the submissions, the Court prepared the final instructions to the jury and the verdict forms.  After the instructions were given to the jury, and they deliberated for four hours, unanimous verdicts were rendered in favor of Defendant Kyle Bradshaw on all claims against him at trial. (D.E. 357, 358, 359).  Final judgment was entered on

February 21, 2017. (D.E. 360).  As this was not the outcome that Plaintiffs' sought, predictably they now move for a new trial under Rule 59, *Fed. R. Civ. P.*  However, the motion filed provides no basis upon which to overturn the jury's verdict.

As will be explained further herein, the trial court has considerable discretion in the conduct of the trial, the admission of evidence, and the preparation of instructions on the law, and no abuse of that discretion has been shown.  The jury instructions fairly and accurately instructed the jury on the law applicable to the claims made.  The testimony of Bradshaw at trial and at prior depositions was fully explored and was the subject of several jury instructions on the weight and credibility of witness testimony. It was up to the jury to determine its truthfulness and weight and they did so by their verdict. As to objections to argument, a timely objection is required for further review and such was not lodged. Plaintiff's grounds are meritless and thus, a new trial is not warranted.

## II.     ARGUMENT & MEMORANDUM OF LAW

### a.  Standard for Motion for New Trial

If the Court believes that the jury verdict was against the great weight of the evidence, or that the verdict will result in a miscarriage of justice, then the Court may grant a motion for new trial.  *Jacobs v. Gielow*, 640 Fed. Appx. 845, 846 (11th Cir. 2015); *Hooks v. GEICO Gen. Ins. Co., Inc.*, 2016 WL 5415134 (M.D. Fla. 2016).  "However, the court should give great deference to the jury's verdict and grant a new trial sparingly."  *Hooks*, 2016 WL 5415134 at 1 (citation omitted).

In *Hooks*, Plaintiff argued that he was entitled to a new trial because Defendant made improper arguments during closing, the verdict was not supported by the great weight of the evidence, and the trial court made erroneous evidentiary rulings.  *Id.* at 1.  The Court observed

that Plaintiff had presented a one-sided version of the case in its motion by taking closing statements out of context; questioning the credibility of witnesses who disagreed with his theory of the case; and merely claiming he was prejudiced by evidentiary rulings he disagreed with.  *Id*. at 1-9.  The Court observed that it "should give great deference to the jury's verdict and grant a new trial sparingly" and denied Plaintiff's motion for new trial.  *Id*. at 1, 9.  The same one-sided version of the case has been presented by the Plaintiffs in this case.  When the case is examined as a whole, it is clear that the verdict was supported by the evidence, and that it is proper to give deference to the jury's verdict by not granting a new trial.

### b.  The Court Did Not Err in Delaying Deposition Testimony

In this point, Plaintiffs contends that it was prejudicial error in not allowing Plaintiff to present the deposition testimony of Bradshaw when they wanted it presented. There is no argument that what they wanted to present was excluded. The Court always has broad discretion on how it manages its trials.  *White v. U.S.*, 2013 WL 3422965, at *2 (M.D. Fla. 2013)(citing *Chrysler Int'l Corp. v. Chemaly*, 280 F.3d 1358, 1360 (11th Cir.2002)).  This includes the use of depositions at trial.  *Id*.  Specifically, a Court has broad discretion over the introduction of deposition testimony to avoid cumulative and repetitive evidence and the wasting the Court's time and resources.  *Id*. at 3 (finding that publishing large portions deposition testimony from witnesses who will be called to give live trial testimony is cumulative and a waste of time.)  In order to show that this discretion was abused, Plaintiff is required to show that its rights were substantially prejudiced.  *Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 307-308 (5th Cir. 1978)(holding that Plaintiff was not prejudiced by the Court's decision to delay the introduction of a witness' deposition testimony until after the witness gave live testimony).  This very issue was discussed pre-trial with the Court entering its order on January 26, 2017 setting forth the

reasons for disallowance. (D.E. 305).

In *Coughlin*, plaintiffs moved for a new trial because the trial court restricted their use of an adverse party's deposition to cross-examination. *Id*. at 308. However, the trial court did let Plaintiffs call that person as an adverse witness, and did allow Plaintiffs to introduce in rebuttal any information not covered in the witness' live testimony. *Id*. The appellate court found that plaintiffs suffered no prejudice from the trial court's ruling because plaintiffs were given an opportunity to introduce any evidence not covered by the live testimony in rebuttal, and that plaintiffs had the opportunity to present that material evidence to the jury. *Id*. The same is true in the instant case, as Plaintiffs were able to impeached Bradshaw with his deposition testimony, and were given the opportunity to introduce the non-cumulative portions of Bradshaw's deposition in rebuttal as well.

Since unquestionably the testimony surrounding the events occurring on the arrests of Plaintiffs was hotly disputed, it was certain that all of the parties would give live testimony of their recollections. The presentation of live witness testimony allowed the jury to observe the factors set forth in the jury instructions regarding the believability of witnesses. Plaintiffs were provided the opportunity to call Bradshaw to the witness stand as an adverse witness in their case in chief. In doing so, he could be asked leading questions. The questioning was not limited. Plaintiffs then had the opportunity to attempt impeachment when they could do so in a proper fashion. Plaintiffs inability to impeach a live witness is not an error of the court, but of Plaintiff. Plaintiff had video clips from the civil deposition loaded and used them as attempted impeachment during his direct examination of Bradshaw during his case in chief.

Thereafter, Plaintiffs were allowed to play video clips of certain portions of Bradshaw's prior deposition testimony that was not cumulative of live testimony already given and used in

the direct examination. In this fashion, the Court could more easily control the prejudice that might ensue to the Defendant of cumulative and repetitive testimony.  As the Court noted, no video deposition testimony would be played without being first examined by the Court. The Court properly recognized that this was the best use of the Court's and the jury's time and to avoid needlessly presenting cumulative evidence. (D.E. 371 at 4:12-16:18).  Just because the Plaintiffs sought a different order of testimony is not grounds for a new trial.  *See White*, 2013 WL 3422965, at *3 (finding that a disruption in the "flow of the Plaintiff's case" was not grounds for a new trial.)

The argument that, if Plaintiffs were allowed to control the presentation of evidence, then they would have been granted a directed verdict at the close of Plaintiff's case under Rule 50(a), *Fed. R. Civ. P.,* is fallacious.  Rule 50(a)(1) states in relevant part:

> In General. *If a party has been fully heard on an issue during a jury trial* and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> > (A) resolve the issue *against the party*; and
> > (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

*Id*. (emphasis added).  Rule 50 motions are intended to resolve issues against parties *after* they have had an opportunity to present evidence on that issue.  Thus, it could not be entered against Bradshaw until he had been fully heard, which means that it could only be entered after the defense case had been presented, not at the close of Plaintiffs' case.  Indeed, Plaintiffs did move for a directed verdict (Motion for Judgment as a Matter of Law) pursuant to Rule 50 at the close of all evidence. (D.E. 340).  Therein, it was again argued that Bradshaw had provided inconsistent testimony; the same argument that is made again here. The court noted that it was familiar with the testimony and by virtue of the denial of the motion, it was up to the jury to

5

decide whether Bradshaw was not to be believed. The jury rejected the argument of Plaintiff by its verdict.

Moreover, Plaintiffs were not prejudiced in any way by the Court's decision to wait to publish the non-cumulative portions Bradshaw's deposition testimony until after his live testimony had been completed. Plaintiffs were able to ultimately publish portions of Bradshaw's deposition testimony that was not cumulative.

### c. The Jury Instructions Accurately Reflected the Law

A party is not entitled to a new trial merely because the Court did not use the proffered language requested by a party for a jury instruction. *Delancey v. Motichek Towing Serv., Inc.*, 427 F.2d 897, 902 (5th Cir. 1970). It is only if the jury instruction given misstates the law, or misleads the jury to the extent that it results in prejudicial harm to the objecting party, that a new trial be justified. *Palmer v. Bd. of Regents of U. System of Ga.*, 208 F.3d 969, 973 (11th Cir. 2000). "So long as the instructions accurately reflect the law, the trial judge is given wide discretion as to the style and wording employed in the instructions." *Id.* (citation omitted). As such, "the court has 'considerable latitude in the choice of language used to convey to the jury in a clear and correct fashion the applicable law.'" *Delancey*, 427 F.2d at 902.

In *Palmer*, plaintiff sought a new trial on the ground that the jury instructions provided were not as clear as Plaintiff wanted them to be, and that the trial court did not use his "clearer" instructions. *Palmer*, 208 F.3d at 975. The appellate court observed that the jury instructions provided by the trial court were correct, and that plaintiff's objections were merely ones of language choice. *Id.* The appellate court further observed that there was no prejudice to plaintiff because he was able to argue the law in his case to the jury based on those correct jury instructions. *Id.* Like in *Palmer*, there was no prejudice in the Court not using Plaintiffs'

suggested language because the jury instruction that were read were correct and accurate, and used by both parties to argue their case.

As to the jury instructions, Plaintiffs claim first that it was error not give their proposed instruction which included the argumentative phrase of a "bright line in the sand".   The Court's jury instruction stated that "the general rule is that a law enforcement official must get a search warrant from a judicial officer before conducting any search of a home."  (D.E. 356 at 12).  The fact that the language requested was argumentative is buttressed by Plaintiffs' use of it during their closing argument. The fact that the Court did not include Plaintiff's alliterative phrase in the instruction is not prejudicial to Plaintiffs.

The second issue the Plaintiffs raise was that the Invasion of Privacy jury instruction contained "language requiring the jury to find that Bradshaw caused their damages."  It is unclear exactly why Plaintiffs take issue with that language, as causation of injury is a necessary element to every claim.  However, to the extent Plaintiffs are arguing that the word "injury" may be narrowly interpreted by a jury to only mean physical injury, then any ambiguity would have been cleared up when the compensatory damages jury instruction was read to the jury.  (D.E. 356 at 21).  That jury instruction explained the jury could award damages for emotional pain, mental anguish, and impairment of reputation, in addition to physical injuries.  The jury instructions, considered as a whole, sufficiently instructed the jury on the issue of causation and compensable damages, and there was no error with the invasion of privacy claim instruction.

The third jury instruction Plaintiffs take issue with was the one on hot pursuit.  (D.E. 356 at 14).  Plaintiffs objected to that instruction because it did not use the language that Plaintiffs desired, which is not a basis for a grant of new trial.  The instruction given on hot pursuit accurately stated the standard for the pursuit of a fleeing felon, and the different standard for

pursuit of a fleeing misdemeanant.  Plaintiffs do not dispute the accuracy of the instruction on the law, just that they wanted it worded differently.

Plaintiffs also argued that the instruction on hot pursuit should have worded differently to coincide with their inaccurate view of the evidence.  Plaintiffs wanted the instruction to state that "the arrest must have been set in motion in a public place, and some sort of chase must have occurred."  Plaintiffs then argue that there was no evidence of a crime being committed outside, so if said instruction was given, then the jury would have entered in a verdict in their favor. Contrary to their argument, the instruction adequately explained that the initial felony needed to occur outside the home. (D.E. 356 at 14).  Secondly, there was testimonial evidence that Mozolicova committed a felony outside the home, and then fled inside to escape arrest. Bradshaw testified that she hit him while he was outside the door of the apartment. The fact that Plaintiffs disputed this testimony is not determinative. All of Plaintiffs' jury instruction issues arise out of the Court's decision not to use the form and language they requested, and not with the accuracy of the instructions. Thus, the instructions were appropriate and fairly stated the applicable law on the evidence presented.

### d.  Bradshaw Did Not Commit Perjury

Plaintiffs are attempting a "second bite at the apple" by arguing for a new trail based on Bradshaw's alleged perjury, in addition to the Rule 60(b)(3) motion they have filed to set aside the final judgment.  However, both Motions should be denied because Bradshaw did not commit perjury.  As an initial matter, the Court should not overturn a jury's verdict based on credibility and factual issues, even when there are allegations of perjury. *Jacobs v. Gielow*, 640 Fed. Appx. 845, 848 (11th Cir. 2015)(upholding a jury verdict because "the claim that [the defendant officers] committed perjury while testifying is left for the jury's consideration.")  The credibility

of a witness, including inconsistencies in testimony, is the province of the factfinder, and a Court should not overturn a jury verdict because of alleged inconsistencies in testimony. *Terrell v. OTS Inc.*, 2011 WL 2619080, at *3 (N.D. Ga. 2011), aff'd, 470 Fed. Appx. 845 (11th Cir. 2012)(citing *Crystal Ent. & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1320 (11th Cir. 2011)).

In *Jacobs*, plaintiff sought a new trial after judgment was entered against him on his §1983 claims against defendant officers for alleged excessive use of force. *Jacobs*, 640 Fed. Appx. at 846. Plaintiff argued, in part, that he should be granted a new trial because defendant officers perjured themselves during the trial by testifying in contradiction to their prior deposition testimony. *Id.* at 848. The appellate court upheld the denial of plaintiff's motion for new trial, observing that "the claim that Hall, Davis, and Gielow committed perjury while testifying is left for the jury's consideration." *Id.* It went on to explain that "the court cannot overturn the jury's resolution of credibility and factual issues." *Id.* Here, the jury was able to properly consider the credibility of the parties based on the ample testimony and evidence provided during trial. As such, the Court should not overturn their resolution of credibility and factual issues.

Plaintiffs' allegation that Bradshaw committed perjury is without merit because Bradshaw's trial testimony was consistent with his deposition testimony. Bradshaw testified in December 2012, when he gave his deposition during the criminal prosecution of the Plaintiffs, that Mozolicova came outside and used violence to resist arrest. (D.E. 367 at 23:25-24:25). Bradshaw made this clear at trial, despite Plaintiffs' counsel's overt attempt to misconstrue his prior testimony and take it out of context. (D.E. 367 at 129:11-130:1). For example, Plaintiffs allege that Bradshaw's trial testimony contradicted his prior deposition testimony that he did not have a warrant or consent to enter the home. However, Bradshaw never testified at trial that he

9

had an arrest warrant or that any of the Plaintiffs consented to his entry into the apartment, so there was no inconsistency or perjury. *See* (D.E. 367 at 125:24-126:19).

Plaintiffs argue that Bradshaw "admitted" in his deposition that he entered the home unlawfully, however Plaintiffs are misrepresenting Bradshaw's testimony. Bradshaw testified that he believed it was legal at the time, until someone told him that they concluded it was not legal. (D.E. 347 at 21:1-9). Bradshaw testified at trial that he did start to move toward Mozolicova to try and take her into custody, but before he could complete that action, Ms. Miric stopped him. (D.E. 347 at 21:1-9; 75:20-76:22). Bradshaw never made it into the apartment before Ms. Miric struck him outside. (D.E. 347 at 21:1-9; 75:20-76:22). This testimony is consistent with his prior deposition testimony. (D.E. 367 at 23:25-24:25). Bradshaw was forthcoming at trial about the fact that he initially tried to take Mozolicova into custody for the noise complaint, and that he was trained that he could not arrest someone in a home for a misdemeanor without a proper exception being applicable. (D.E. 347 at 33:5-15; 74:24-76:12). Plaintiffs repeated attempts to twist excerpts of Bradshaw's deposition testimony to make it appear that he "admitted to entering the home unlawfully" are obvious in light of Bradshaw's whole testimony at deposition and trial. Is it disingenuous for Plaintiffs to argue that "Bradshaw never once attempted to explain the material differences between his civil deposition and his trial testimony," when Plaintiffs never asked that question.

Plaintiffs also tried to collaterally impeach Bradshaw by taking out of context the deposition testimony of Officer Harp and Officer Herman. Officer Herman was not there during the 'second noise violation' and has no personal knowledge as to what happened. (D.E. 344 at 21:17-20). Officer Harp was looking elsewhere, to check for individuals coming up behind them, when Ms. Miric came outside to strike Bradshaw. (D.E. 343 at 45:24-47:23). Plaintiffs

improperly use Officer Herman's and Officer Harp's deposition excerpts to argue that Bradshaw unlawfully entered the home when Plaintiffs are fully aware that these officers do not have personal knowledge about what happened when Ms. Miric first struck Bradshaw. Plaintiffs also incorrectly argue that the determinations of a separate matter, i.e. the criminal proceedings against Plaintiffs, somehow controls the determinations of the Court and jury in this case.

Plaintiffs used every possible opportunity to try and impeach Bradshaw during trial with Bradshaw's alleged 'inconsistent testimony.' *E.g.* (D.E. 347 at 22:23-27:2); (D.E. 371 at 5:4-16:17); (D.E. 374 at 70:5-72:8). They took full advantage of the opportunity to point out Bradshaw's alleged "lies" to the jury, and gave the jury plenty of opportunities to judge Bradshaw's credibility. Plaintiffs cannot now move for a new trial because they want to substitute their determinations of credibility for those of the fact finder.

Even if the Court uses the standard Plaintiffs cite in their motion for granting a new trial based on perjury, their arguments still fail. Plaintiffs cite to *Davis by Davis v. Jellico Community Hosp. Inc.*, 912 F.2d 129, 134 (6th Cir. 1990), for the standard that:

> A new trial should be granted where the court is reasonably well satisfied that the testimony given by a material witness is false; that, without it, a jury might have reached a different conclusion; *that the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after trial*.

*Id*. (emphasis added). Plaintiffs were not taken by surprise, and were fully aware of what they contended to be false testimony before the trial started. Plaintiffs possessed both the criminal deposition and civil deposition testimony of Bradshaw's and knew what he testified to in the depositions. Indeed, the defense recap of the testimony was outlined in Bradshaw's response to Plaintiff's Motion for Partial Summary Judgment filed more than three months before trial. (D.E. 228). Therein, it was stated:

Plaintiffs assert that "Bradshaw reached into the home, grabbed Miric by the hand inside the house, and pulled her outside." D.E. 221, p. 2. However, Bradshaw testified that Miric was standing in the doorframe slightly outside of the unit and used her arms to push Bradshaw to prevent him from effectuating an arrest on Mozolicova. D.E. 221-8 at [34:13-15]; [39:17-18]; [74:17-18]; [77:24-25]; [90:24-91:6]; [119:25-120:4]. There is also record evidence that Mozolicova exited the unit and attempted to pull Miric back inside the unit to prevent Bradshaw and Harp from effectuating Miric's arrest. *Id.* at [65:21-24]; [107:7-22]; D.E. 221-10 at [58:5-8]. ***Bradshaw attempted to effectuate an arrest of Mozolicova while she was outside of the unit and Mozolicova struck Bradshaw, pulled away, and went back inside the unit. D.E. 221-8 at [107:2-22].*** As a result of Mozolicova's obstruction of Miric's arrest, her physical aggressiveness towards the officers, and resisting arrest, ***Bradshaw entered the unit in fresh pursuit of Mozolicova.*** *Id.* at [106:16-107:22]; *See* D.E. 221-7 at [112:9-25].

Even the current motion conceded they anticipated what Bradshaw's testimony would be and they simply wanted to jump it by presenting cross examination first. To claim that they were just trying to "prevent potential perjury from Bradshaw" by playing his deposition testimony at trial first is disingenuous. (D.E. 379 at 21). There was no surprise at all to Plaintiffs from the consistent testimony given by Bradshaw prior to trial.

### e.  Defense Counsel Did Not Make Improper Closing Arguments

A Court should be reluctant to set aside a jury verdict because of arguments made by counsel during closing remarks. *Hooks*, 2016 WL 5415134, at *2 (citing *Danow v. Borack*, 346 Fed. Appx. 409, 411 (11th Cir. 2009)). When determining whether to grant a new trial based on the arguments of counsel during closing, the Court should consider

> the entire argument, the context of the remarks, the objection raised, and the curative instruction to determine whether the remarks were such as to impair gravely the calm and dispassionate consideration of the case by the jury.

*Danow*, 346 Fed. Appx. at 411 (citation omitted). Further, "a timely objection is necessary to bring to the district court's attention errors in counsel's arguments." *Oxford Furniture Companies, Inc. v. Drexel Heritage Furnishings, Inc.*, 984 F.2d 1118, 1128 (11th Cir. 1993).

Plaintiffs argue that they are entitled to a new trial because defense counsel allegedly

referenced deposition testimony from 2012 that was not in evidence.  However, Bradshaw did testify at trial about his deposition in 2012, and testified that he explained, at said deposition, that Mozolicova struck him outside.  *E.g.* (D.E. 347 at 129:11-130:1).  Moreover, Plaintiff called Dr. McCauley, his so called "police practices expert," who was allowed to testify that, after he read the depositions, what Bradshaw did during the arrest was essentially illegal and that there was no hot pursuit or exigent circumstances.  Since the witness was relying on the deposition testimony for his "opinions," he was cross examined on what was contained in those depositions, which was contrary to his opinions.  He admitted that Bradshaw testified in the 2012 criminal deposition that, when Bradshaw was attempting to arrest Miric, "Monika Mozolicova came outside the unit and grabbed Miric."  Indeed, Plaintiffs also read deposition testimony during rebuttal of the witness. Thus, Bradshaw's testimony from his December 2012 deposition was in evidence, and was properly the subject of closing arguments.

Further, Plaintiffs failed to object to defense counsel's references to the December 2012 deposition numerous times.   (D.E. 374 at 37:2-38:3; 43:22-44:1; 44:20-45:1; 63:11-18). Plaintiffs only objected once to a December 2012 deposition testimony reference.  (D.E. 374 at 60:22-61:8).   Even though the objection was not well founded, since Bradshaw did give testimony and the testimony was in evidence, (D.E. 347 at 129:11-130:1), the Court gave the curative instruction that "the jury will recall the testimony."  (D.E. 374 at 61:7-8).  The very purpose of a curative instruction is to resolve any potential prejudice at that moment.  *See Hooks*, 2016 WL 5415134, at *2 (observing that Court's instruction to the jury "to rely on their recollection of the evidence" cured any prejudice from alleged misrepresentations of evidence in closing arguments).

### f.   "Outside Video" Was Properly Admitted Into Evidence

13

Courts are given wide discretion with respect to their evidentiary rulings, and those rulings will be affirmed unless they are manifestly erroneous. *Tardiff v. Geico Indem. Co.*, 481 Fed. Appx. 584, 586 (11th Cir. 2012). In addition to proving that the evidentiary ruling was "manifestly erroneous," a party moving for new trial must also prove that the evidentiary ruling had a *substantial* prejudicial effect. *Id*.

Plaintiffs argue that the Court erred when it admitted the "outside video," filmed by Ms. Miric, that showed Officer Bradshaw, Officer Herman, and Officer Harp giving Mozolicova the Notice to Appear for her noise violation. They argue that the video was irrelevant, contained inadmissible hearsay, and was prejudicial under Rule 403.

First, the "outside video" was clearly relevant to the issues in the case. One of the major issues in contention was how Bradshaw reacted to the Plaintiffs, and how he treated them. This video shows how the Officers, including Bradshaw, were conducting themselves prior to the second noise violation. It also shows the interactions between Mozolicova and the Officers, including statements made by Mozolicova that the people in the apartment were celebrating the birth of a baby. That statement is very relevant in light of Plaintiffs' trial testimony that they were not celebrating anything the night of the incident. The video evidence goes directly to the events leading up to the second noise violation, and the behavior of Mozolicova and Bradshaw.

Second, the video is not objectionable as hearsay because it was not being offered for the truth of the matters asserted by Ms. Miric. As mentioned above, the video had admissible statements by Mozolicova, and showed Bradshaw's reactions and behavior during the issuance of the Notice to Appear. The truthfulness of Ms. Miric's comments was not the purpose for introducing the video into evidence. To the contrary, the video was submitted to show that Bradshaw acted professionally and calmly while issuing the Notice to Appear, regardless of what

Ms. Miric was saying.

Third, any alleged prejudice to the Plaintiffs from the video was outweighed by the probative value of the video. Again, the video showed critical interactions between Mozolicova and Bradshaw in the moments before the second noise violation occurred. Additionally, the video contains Mozolicova's explanation that the people in the apartment were celebrating the birth of a baby, which would be consistent with the Plaintiffs, and their guests, drinking alcohol as part of that celebration. This evidence outweighs any alleged prejudice from Ms. Miric's comments, especially in light of the fact that other witnesses had testified about Ms. Miric's belligerent behavior without objection from the Plaintiffs. (D.E. 343 at 38:20-22); (D.E. 344 at 32:22-34:5). Moreover, Plaintiff introduced the video taken inside the residence ("the inside video") and thus opened the door to the admission of the second video. As the Court noted, if one was admissible at the request of Plaintiff, the second would be equally admissible when requested by Defendant. Additionally, parts of the "outside video" were shown during opening statement.

Moreover, Plaintiffs failed to show that they suffered *substantial* prejudice from the admission of the video. Plaintiffs did not object to witness testimony about Ms. Miric's disrespectful behavior to the officers, so any alleged prejudice is irrelevant based on that fact alone. Additionally, Plaintiffs lodged no objection to reference to it in closing argument, thus waiving any claim of prejudice. *Oxford Furniture Companies, Inc.*, 984 F.2d 1118, 1128 (11th Cir. 1993)("a timely objection is necessary to bring to the district court's attention errors in counsel's arguments.")

WHEREFORE, Defendant, KYLE BRADSHAW, respectfully requests this Court enter an Order denying Plaintiffs' Request for New Trial Pursuant to Rule 59 *Fed. R. Civ. P.*, and

awarding any further relief this Court deems just and proper.

Respectfully submitted,

**ROBERTS, REYNOLDS, BEDARD & TUZZIO, PLLC**
470 Columbia Drive, Bldg. C101
West Palm Beach, FL  33409
Phone: 561-688-6560/Fax: 561-688-2343
E-Service: service_LHR@rrbpa.com
Email: lreynolds@rrbpa.com
Attorneys for Defendant Bradshaw

***/s/ Lyman H. Reynolds, Jr.***
**LYMAN H. REYNOLDS, JR.**
Florida Bar No: 380687

16

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy hereof has been furnished by CM/ECF

<u>OR</u> e-service to all parties on the attached Counsel List this 31st day of March, 2017.

**ROBERTS, REYNOLDS, BEDARD & TUZZIO, PLLC**
470 Columbia Drive, Bldg. C101
West Palm Beach, FL  33409
Phone: 561-688-6560/Fax: 561-688-2343
E-Service: <u>service_LHR@rrbpa.com</u>
Email: <u>lreynolds@rrbpa.com</u>
Attorneys for Defendant Bradshaw

<u>*/s/ Lyman H. Reynolds, Jr.*</u>
LYMAN H. REYNOLDS, JR.
Florida Bar No: 380687

## COUNSEL LIST

TAMMY RAY PAGE, ESQ.
Page Law, P.A.
13410 Parker Commons Blvd., Ste. 101
Ft. Myers, FL 33912
Co-Counsel for Plaintiffs
PHONE: 941-444-9507
FAX: 941-761-5625
E-SERVICE: ecf@pagelawpa.com
                    trp@pagelawpa.com
FBN:  106563

STEPHEN P. NORMAN, ESQ.
The Norman Law Firm
30838 Vines Creek Rd., Unit 3
Dagsboro, DE 19939
Co-Counsel for Plaintiffs
PHONE: 302-537-3788
FAX: 302-258-0705
E-SRVC: snorman@thenormanlawfirm.com
                ejansen@thenormanlawfirm.com

LYMAN H. REYNOLDS, JR., ESQ.
Roberts, Reynolds, Bedard & Tuzzio, PLLC
470 Columbia Dr., Bldg. C101
West Palm Beach, Florida  33409
Counsel for Defendant Bradshaw
PHONE: 561-688-6560
FAX: 561-688-2343
E-SERVICE: service_LHR@rrbpa.com
EMAIL: lreynolds@rrbpa.com
                bsmith@rrbpa.com
FBN: 380687