[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-12332
Non-Argument Calendar

_____

D.C. Docket No. 2:14-cv-00270-PAM-MRM

ALEKSANDAR STEPANOVICH,

Plaintiff - Counter Defendant - Appellant,

MONIKA MOZOLICOVA,
IVANA KAVAJA,

Plaintiffs - Appellants,

MILAN UZUNOVIC,

Plaintiff,

versus

CITY OF NAPLES,
KYLE BRADSHAW,
Officer,

Defendants - Appellees,

RYAN HARP,
Officer, et al.,

Defendants,

MICHAEL O'REILLY,

Defendant - Counter Claimant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(March 13, 2018)

Before MARCUS, JULIE CARNES, and HULL, Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants Aleksandar Stepanovich, Monika Mozolicova, and Ivana Kavaja (collectively, "Plaintiffs") appeal following the district court's denial of their motions for a new trial in an action they filed against Officer Kyle Bradshaw and the City of Naples. The operative complaint brought claims against Bradshaw under 42 U.S.C. § 1983, alleging invasion of privacy, excessive force, false arrest, and malicious prosecution; § 1983 claims against the City, alleging constitutional violations stemming from the police department's reporting and booking practices; and state law claims, including negligence by the City for failing to correct false information in its records about Stepanovich. On appeal, the Plaintiffs challenge the district court's dismissal of several claims, its evidentiary rulings, its denial of a motion for a continuance, its jury instructions, and its denial of motions for a new trial. After careful review, we affirm.

2

I.

"We review a district judge's order granting a motion under Rule 12(b)(6) de novo."   Bhd. of Locomotive Engineers & Trainmen Gen. Comm. of Adjustment CSX Transp. N. Lines v. CSX Transp., Inc., 522 F.3d 1190, 1194 (11th Cir. 2008).   We review the district court's evidentiary rulings for abuse of discretion.   United States v. Wilk, 572 F.3d 1229, 1234 (11th Cir. 2009). Similarly, we review the district court's disposition of a motion for new trial for abuse of discretion.   Davis v. Wal-Mart Stores, Inc., 967 F.2d 1563, 1566 (11th Cir. 1992).   A motion for a continuance is also reviewed for abuse of discretion. Edward Leasing Corp. v. Uhlig & Assocs., Inc., 785 F.2d 877, 879 (11th Cir. 1986).   Whether jury instructions misstate the law is reviewed de novo, but otherwise the district court is granted wide discretion in how it instructs the jury. Palmer v. Bd. of Regents of Univ. Sys. of Ga., 208 F.3d 969, 973 (11th Cir. 2000). Further, a district court's refusal to give a requested jury instruction is reviewed for abuse of discretion.   United States v. Grigsby, 111 F.3d 806, 814 (11th Cir. 1997).

II.

The relevant background -- taken from the complaint and trial -- is this.   In the early morning hours of May 17, 2012, police officers Kyle Bradshaw and Ryan Harp responded to a noise complaint at an apartment in the City of Naples.   The apartment was being rented by Stepanovich and his wife Mozolicova.   Shortly after

issuing a citation for a noise violation, the officers were called back to the apartment on another noise complaint.  On their second visit to the apartment, Bradshaw and Harp were met at the door by AnnaMiria Miric, a friend of Stepanovich and Mozolicova.  They told Miric they needed to speak with Mozolicova, but Miric replied that they needed a warrant to enter the apartment.

Plaintiffs presented evidence at trial that at this point the officers pulled Miric out of the apartment and handcuffed her, while Bradshaw testified that she was standing outside the door when they effectuated the arrest.  Because Mozolicova was standing behind Miric when she answered the door, the Plaintiffs also argued at trial that Bradshaw reached into the apartment to pull Mozolicova out of it.  This account is corroborated by Officer Bradshaw's pretrial deposition and his arrest report.  But in a 2012 deposition in a related criminal prosecution of Stepanovich, Bradshaw testified that Mozolicova was outside the apartment when he tried to grab for her, and that she hit him before fleeing back inside.  This is also essentially the version of the incident Bradshaw recounted at the trial, where he testified that Mozolicova came out of the apartment to try to pull Miric back into the unit, and that, while she was outside, she hit him when he tried to grab her.

At that point, Bradshaw tried to enter the apartment in pursuit of Mozolicova, and was involved in an altercation with Stepanovich.  He then placed Stepanovich in handcuffs and took him outside.  Bradshaw reentered the apartment

to search for Mozolicova and found her in the bedroom.  The Plaintiffs offered evidence that Officer Bradshaw then slammed Mozolicova's head into a window ledge, causing her to bleed.  Bradshaw, however, testified the injury was self-inflicted.  According to the Plaintiffs's testimony, the officers also violently beat Stepanovich and tased him without provocation, while the officers testified Stepanovich was tased after he attempted to hit an officer.

Bradshaw transported to jail Stepanovich, Mozolicova, and Ivana Kavaja (Stepanovich's sister who also was involved in the altercation with police at her brother's apartment), and completed a booking sheet about the incident.  Because his report acknowledged that he entered the apartment in order to effectuate an arrest, the Plaintiffs' complaint alleged that the booking sheet showed Bradshaw's unlawful conduct on its face.  It added that Bradshaw's supervisors did not detect the unlawfulness admitted to in the report because they did not properly review it, and, if they had, they would have taken steps to stop the prosecution of Mozolicova and Kavaja.  The complaint blamed this failure to review the report on the cumbersome nature of the City's internal reviewing system, and said the City's Chief of Police knew the flawed system had led to past constitutional deprivations.

Mozolicova and Kavaja were both charged with resisting arrest with violence, a third-degree felony, and misdemeanors of resisting arrest without violence and disorderly conduct.  The misdemeanor charges were dismissed and

each woman eventually pled no contest to a disorderly conduct charge, at which point the felony charges were dismissed.

Stepanovich was charged with third-degree felonies of battery, resisting arrest with violence, and aiding escape, and with misdemeanor charges of resisting arrest without violence and disorderly conduct.  The trial judge in Stepanovich's criminal case dismissed all the charges based in part on his finding that the officers' entry into Stepanovich's home was unlawful.

In the lead up to the criminal trial, the City of Naples published a press release that claimed that Stepanovich was wanted for a murder in Siberia. According to the complaint, this press release was false and was based on mistaken information that Bradshaw included in his arrest report.  As a result of this press release, the Plaintiffs alleged that they lost their jobs and apartment.

Thereafter, Stepanovich, Mozolicova, and Kavaja brought this suit against Bradshaw and the City of Naples.  The district court granted the City's motion to dismiss all claims against it, as well as Bradshaw's motion to dismiss the malicious prosecution claim brought against him.  Before trial, the district court also rendered a number of evidentiary rulings, including placing limits on how the Plaintiffs could use Bradshaw's deposition testimony at trial and allowing in evidence, over the Plaintiffs' objections, a video taken of some of the events leading up to the incident at Stepanovich's apartment.  Five days before trial, the plaintiffs came into

possession of new information relating to the City's use-of-force practices.  On the basis of this information, they asked for a continuance of the trial and for the district court to reconsider its dismissal of the claims against the City.  The district court denied both motions.

The jury returned a verdict finding in favor of Bradshaw and against the Plaintiffs on all counts.  The Plaintiffs then moved for a new trial with the district court, which was denied.  This appeal ensued.

### III.

For starters, we are unpersuaded by the Plaintiffs' claim that the district court erred in denying their motion for summary judgment on their claims against Bradshaw when it considered supposedly sham evidence in rendering its decision. In particular, the Plaintiffs argue that the district court erred in relying on Bradshaw's 2012 criminal deposition to find a genuine issue of material fact because the deposition contradicted earlier and later statements Bradshaw made about the incident.  But this issue is not properly before us.  It is well-established that "a party may not appeal an order denying summary judgment after there has been a full trial on the merits."  Pensacola Motor Sales Inc. v. E. Shore Toyota, LLC, 684 F.3d 1211, 1219 (11th Cir. 2012).  Here, the Plaintiffs did not renew their summary judgment motion on a Rule 50 motion after trial, nor did they seek a certification of appeal of the denial of summary judgment before trial.  They

therefore cannot now appeal the district court's resolution of an issue presented in a pretrial summary judgment motion.  Lind v. United Parcel Serv., Inc., 254 F.3d 1281, 1285 (11th Cir. 2001).[1]

We also find no merit to the Plaintiffs' argument that the district court erred in dismissing their Monell claim[2] against the City of Naples.  In their second amended complaint, the Plaintiffs claimed that the City's internal system by which police supervisors reviewed officers' arrest reports was flawed and cumbersome, thereby paving the way for the supposedly malicious prosecution of the Plaintiffs. The Plaintiffs do not argue that the allegedly flawed booking system is facially invalid as a constitutional matter.  As a result, in order to survive a motion to dismiss, their complaint must lay out a plausible claim that the City showed

---

[1] In any event, even if the Plaintiffs' "sham evidence" argument was properly before us, the district court correctly held that the contradictions in Bradshaw's various accounts of the incident created a genuine issue of fact.  We recognize that Bradshaw's shifting accounts of what occurred no doubt present inconsistencies, and, at certain points, contradictions.  Nevertheless, it cannot be said that his 2012 deposition contains "clear answers to unambiguous questions" that intractably contradict, "without explanation," his subsequent, 2015 deposition such that, by law, the district court couldn't consider the 2012 deposition.  Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 658 (11th Cir. 1984).  Neither deposition is a model of narrative clarity; they both suggest uncertainty on the part of Bradshaw rather than a conscious effort to create a factual dispute where none exists.  See Kennett-Murray Corp. v. Bone, 622 F.2d 887, 894 (5th Cir. 1980); see also Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) (adopting as binding precedent all Fifth Circuit decisions issued before October 1, 1981).  Thus, even if the issue were properly before us, Bradshaw's 2012 deposition cannot be said to constitute "sham evidence" under our precedent.

[2] Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).  Actually, the district court dismissed two separate Monell claims against the City, but the Plaintiffs have not argued on appeal that the district court erred in dismissing their Monell claim concerning the City's use-of-force reporting system.  They therefore have abandoned this argument.  See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004).

deliberate indifference to the constitutionally suspect consequences of its custom or policy.  See Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 407 (1997) ("[A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences.").

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick v. Thompson, 563 U.S. 51, 61 (2011) (quotations omitted) (alterations adopted).  In other words, a municipality must have actual or constructive notice that its policy was likely to result in a constitutional deprivation like the one alleged by the plaintiff.  Id.  To demonstrate the notice required for deliberate indifference, "[a] pattern of similar constitutional violations . . . is ordinarily necessary."  Id. at 62.  A pattern like this establishes the municipality's culpability because the "continued adherence to an approach that [it] know[s] or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of [its] action -- the 'deliberate indifference' -- necessary to trigger municipal liability."  Bryan Cty., 520 U.S. at 407.

Plaintiffs' second amended complaint failed to allege facts sufficient to state a plausible claim that the City was deliberately indifferent to, and therefore

culpable for a custom or practice that led to a violation of their constitutional rights. The complaint's sole allegation suggesting the City had some awareness, actual or constructive, that its flawed booking system had led to constitutional deprivations is that the City's Chief of Police "testified that his main issue at the time of the incident was with the cumbersome booking sheet system having 'individuals being arrested and taken to jail, have their rights taken away, go to jail without proper review.'" But this does not plausibly state facts tending to show that the City had actual or constructive notice of a policy that was resulting in constitutional deprivations similar to the ones allegedly suffered by the Plaintiffs.

Rather, this allegation is highly generalized, amounting to little more than a bald assertion that the City's Chief of Police was aware of some general problem with its booking system. Thus, the complaint lacks sufficient facts to plausibly show a "series of constitutional violations from which deliberate indifference can be inferred." Craig v. Floyd Cty., Ga., 643 F.3d 1306, 1311 (11th Cir. 2011) (quotations omitted) (emphasis added). Nor is the type of prior constitutional violations purportedly mentioned in the Chief's testimony at all specified or described. The complaint says only that individuals were having "their rights taken away." On this record, Plaintiffs offered scant allegations that any pattern of constitutional violations occurred and made no allegations that the City's booking polices put the City on notice of constitutional violations similar to the ones

Plaintiffs claim to have suffered.  See Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1329 n.21 (11th Cir. 2015) (affirming the dismissal of a Monell claim where allegations about prior incidents that might have given the sheriff's office notice of a constitutionally infirm policy or custom did not include allegations that the incidents had led to "similar violations" of constitutional rights to the ones allegedly suffered by the plaintiffs).  Nor, moreover, does the complaint indicate that the booking system's problems were "so obvious and the likelihood of constitutional violations" so predictable as to put the City on notice of the policy's supposed constitutional infirmities absent a pattern of prior violations.  Gold v. City of Miami, 151 F.3d 1346, 1352 (11th Cir. 1998).  The complaint thus lacks the "factual enhancement" underlying the City's awareness of the supposed booking problems that is needed to push the claim from the realm of the probable to the plausible.  Franklin v. Curry, 738 F.3d 1246, 1251 (11th Cir. 2013) ("[A] plaintiff cannot rely on naked assertions devoid of further factual enhancement.") (quotations omitted).

Next, we disagree with the Plaintiffs' claim that the district court erred in dismissing their state law claims against the City for negligently failing to correct inaccurate information about Stepanovich that it published in a press release.  It is true that at least one Florida court has held that in some cases a government agency has a duty to act non-negligently when it learns of mistakes in its records that may

11

result in an adverse consequence for a particular citizen.  See Glenney v. Forman, 936 So. 2d 660, 662 (Fla. Dist. Ct. App. 2006).  However, far from creating a general duty to maintain accurate records, correct mistaken records, or release accurate information on the part of the government, the Glenney court expressly disclaimed the existence of this kind of duty.  Id.  Instead, the Florida appellate court found that a court clerk had a special duty to act non-negligently only after she became aware of a mistake in her records, failed to correct it, and subsequently, on the basis of the mistake in those records, issued a warrant for the plaintiff's arrest.  Id. ("The Clerk's duty to Glenney became a special duty to act non-negligently once the Clerk's office became aware of the mistake in naming her as the criminal defendant and failed to correct it.").

Here, the Plaintiffs' complaint alleged a breach of duty based on a mistaken press release, but, as the complaint also admits, the City was not aware that any of the information in its press release was mistaken at the time the City issued it. Since the duty in Glenney only arose after the government became aware that it was relying on mistaken information, the Plaintiffs simply failed to allege any facts showing that the City owed them a duty at the time of the press release.  In short, because there is no general duty under Florida law to maintain accurate records or correct mistaken records, the complaint here failed to state a claim with respect to the City's actions in releasing the press release with false information.

12

Similarly, we reject the Plaintiffs' challenge to the district court's dismissal of their malicious prosecution claims against Officer Bradshaw. To sue for malicious prosecution, a plaintiff must, among other things, show that "the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff." Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004). Here, the Plaintiffs were initially charged with resisting arrest without violence, disorderly conduct, and resisting arrest with violence. According to the second amended complaint, the prosecution dropped the resisting-arrest-without-violence and disorderly conduct charges in favor of pursuing the resisting-arrest-with-violence charge, which was ultimately reduced to a disorderly conduct charge and with respect to which the Plaintiffs pleaded no contest. While it is true that under certain circumstances the dismissal of some charges without explanation can indicate innocence on those charges, and, in turn, can constitute a termination of those charges favorable to the putative defendant, Uboh v. Reno, 141 F.3d 1000, 1005 (11th Cir. 1998), that is not true here. The Plaintiffs' complaint plainly admitted that the prosecution proceeded with a resisting-with-violence charge and that the Plaintiffs ultimately pleaded no contest to disorderly conduct. In light of these allegations, Plaintiffs have not "plausibly suggest[ed]" that the prosecution's decision not to pursue the original charges of resisting without violence and disorderly conduct indicated innocence on those

13

charges, and therefore constituted a termination of the proceedings favorable to the Plaintiffs. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). Rather, these facts are just as, if not more consistent with a sound exercise of prosecutorial discretion. Accordingly, the district court properly concluded that the Plaintiffs failed to state a claim for malicious prosecution.

We also are unconvinced by the argument that the district court abused its discretion by denying the Plaintiffs' motion to introduce Officer Bradshaw's prior deposition testimony. It is well settled that an erroneous evidentiary ruling will result in reversal only if the resulting error was not harmless. United States v. Azmat, 805 F.3d 1018, 1041 (11th Cir. 2015). In this case, regardless of whether the district court erred under Fed. R. Civ. P. 32(a) by not allowing the Plaintiffs to introduce large portions of the deposition in their case in chief, they were not prejudiced by this decision. The district court allowed them to use the deposition during cross-examination, and also permitted them to call Officer Bradshaw as an adverse witness and to introduce in rebuttal any portions of his deposition testimony that were not elicited in his live testimony. And the Plaintiffs did in fact call Bradshaw at trial as an adverse witness and used portions of deposition in an attempt to impeach him. The Plaintiffs also introduced portions of the deposition in rebuttal after the defendants had rested, and again used the deposition during closing argument. On this record, the Plaintiffs were more than able to show the

jury how Bradshaw's trial testimony was in tension with his deposition testimony, and the district court's order preventing the Plaintiffs from using Bradshaw's deposition testimony in their case in chief did not prejudice them in any way. <u>See Coughlin v. Capitol Cement Co.</u>, 571 F.2d 290, 308 (5th Cir. 1978).

As for Plaintiffs' challenge to the trial court's admission in evidence of a video, with audio, of the officers' interactions with Mozolicova on the night in question (taken by Miric and with allegedly inflammatory commentary by Miric), we find no abuse of discretion. The Plaintiffs say that Miric's commentary -- which showed her acting intoxicated, and berating and making offensive comments to the officers while they spoke to Mozolicova -- was unfairly prejudicial under Fed. R. Evid. 403 insofar as the jury may have imputed Miric's behavior to the Plaintiffs. The district court reasoned that the video and audio's probative value outweighed any unfair prejudice because it tended to show the officers' calm and collected demeanor even as they were being harangued in a tense situation.

The purpose of Rule 403 is "limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." <u>United States v. Roark</u>, 753 F.2d 991, 994 (11th Cir. 1985) (quotations omitted). Even if evidence is especially graphic or inflammatory, a district court acts within its discretion to admit it if it is also "particularly helpful in allowing a jury to better understand" an important issue in the case. <u>Eghnayem v. Boston Sci.</u>

Corp., 873 F.3d 1304, 1316 (11th Cir. 2017); see also United States v. 0.161 Acres of Land, more or less, situated in City of Birmingham, Jefferson Cty., Ala., 837 F.2d 1036, 1041 (11th Cir. 1988) ("[G]iven the district court's finding that [the] testimony would have been relevant, and [our] conclusion that it was directly probative of the central issue at bar, Rule 403 is a highly unlikely mechanism to exclude [the] testimony."). Put another way, "because it permits a trial court to exclude concededly probative evidence, Rule 403 is an extraordinary remedy which should be used sparingly." United States v. King, 713 F.2d 627, 631 (11th Cir. 1983) (quotations omitted).

As the district court observed, Officer Bradshaw's demeanor in the moments before the alleged constitutional violation was especially relevant because the Plaintiffs sought punitive damages, which meant the jury had to assess whether Bradshaw behaved maliciously. Properly understanding Bradshaw's demeanor required the jury to see and hear the full context of the events, including Miric's contemporaneous comments to the officer. On this record, the district court acted well within its discretion by allowing the jury to watch the video with audio.

The Plaintiffs also claim that the district court gave two jury instructions that inadequately explained the law, and abused its discretion by refusing to give the Plaintiffs' proposed jury instructions instead. As for the first one, the district court told the jury that "[t]he general rule is that a law enforcement official must get a

search warrant from a judicial officer before conducting any search of a home."

Plaintiffs say this instruction was incomplete, and at trial requested an instruction

that would have added that "any crossing of the threshold of the home, by even a

fraction of an inch, is too much."  Notably, the "search of the home" instruction the

district court gave is a verbatim statement of our pattern jury instructions and an

accurate statement of the law.  See Brigham City, Utah v. Stuart, 547 U.S. 398,

403 (2006) ("It is a basic principle of Fourth Amendment law that searches and

seizures inside a home without a warrant are presumptively unreasonable.")

(quotations omitted).  It is true that the court did not fully elaborate on what "any

search of a home" means.  As the Supreme Court has made clear, "any physical

invasion of the structure of the home, by even a fraction of an inch, [is] too much."

Kyllo v. United States, 533 U.S. 27, 37 (2001) (quotations omitted).   But the

district court nevertheless acted within its discretion in declining to give the

Plaintiffs' more elaborate instruction.  The fact that a portion of the instructions

was not as comprehensive as the Plaintiffs would like does not constitute an abuse

of discretion where the overall instruction accurately states the law.  See Morgan v.

Family Dollar Stores, Inc., 551 F.3d 1233, 1283 (11th Cir. 2008) ("When the

instructions, taken together, properly express the law applicable to the case, there is

no error even though an isolated clause may be inaccurate, ambiguous, incomplete

or otherwise subject to criticism.") (quotations omitted).  And in any event, the

district's court's decision to decline to give the requested instruction did not prejudice the Plaintiffs since the instruction that was actually given allowed them to fully argue their theory of the case in closing.   Accordingly, we affirm the district court's ruling on the Plaintiffs' "fraction of an inch" instruction.

This same reasoning applies to the Plaintiffs' other requested instruction the district court did not give -- this time on the burden of proof for the hot pursuit exception to the general warrant requirement.   The district court instructed the jury that "there are certain exceptions to [the] general rule [that law enforcement must get a warrant for any search of the home].   One exception is called exigent circumstances.   The 'hot pursuit' of a fleeing felon may be an example of exigent circumstances."   The instructions also told the jury that "it is the responsibility of Plaintiffs . . . to prove every essential part of their claims by a 'preponderance of the evidence.' This is sometimes called the 'burden of proof' or the 'burden of persuasion.'"   As before, the district court's instruction was an accurate statement of the law.   See Kentucky v. King, 563 U.S. 452, 460 (2011); United States v. Holloway, 290 F.3d 1331, 1338 (11th Cir. 2002).   Consequently, the Plaintiffs' criticism about the precise wording of the instruction or the lack of elaboration on the burden of proof is insufficient to show an abuse of discretion.   See Palmer v. Bd. of Regents of Univ. Sys. of Ga., 208 F.3d 969, 973 (11th Cir. 2000) ("So long as the instructions accurately reflect the law, the trial judge is given wide discretion

as to the style and wording employed in the instructions.").  This is particularly true since the district court also properly instructed on burden of proof, and a jury is presumed to follow and understand a judge's instructions.  See Weeks v. Angelone, 528 U.S. 225, 234 (2000); Brown v. Jones, 255 F.3d 1273, 1280 (11th Cir. 2001).  Thus, we find no abuse of discretion concerning this instruction either.

As for the Plaintiffs' two challenges to the district court's denial of their motion for a new trial, we affirm.  We note at the outset that "motions for a new trial are highly disfavored."  United States v. Jernigan, 341 F.3d 1273, 1287 (11th Cir. 2003).  Plaintiffs first say that Bradshaw committed perjury at trial, as shown by the inconsistencies between his trial testimony and his prior statements about his arrest of Mozolicova.  But these inconsistencies do not mean Officer Bradshaw committed perjury warranting a new trial.  See Crystal Entm't & Filmworks, Inc. v. Jurado, 643 F.3d 1313, 1322 (11th Cir. 2011) (explaining that inconsistencies in trial testimony usually go to witness credibility and are weighed by the factfinder).  And a new trial is not at all warranted here -- the Plaintiffs were able to highlight the inconsistencies at trial, and thus allowed the jury to weigh Bradshaw's credibility.  See BankAtlantic v. Blythe Eastman Paine Webber, Inc., 955 F.2d 1467, 1476 (11th Cir. 1992).

As for Plaintiffs' second new-trial argument -- that Bradshaw's counsel improperly argued facts not in evidence in closing argument by making repeated

reference to facts in Bradshaw's 2012 deposition testimony that were not introduced in evidence at trial -- there are several problems.  First, the Plaintiffs are mistaken when they assert that portions of Bradshaw's 2012 deposition were not in evidence.  It is clear that Officer Bradshaw's counsel introduced portions of the deposition to impeach Plaintiffs' expert witness, and that the Plaintiffs themselves introduced portions of the deposition to impeach Bradshaw.  As a result, Bradshaw's lawyer did not improperly refer to facts not in evidence.

We recognize that the way that Bradshaw's counsel used the deposition testimony in closing suggested that the jury should rely on the deposition for the truth of the account of events contained therein rather than for impeachment purposes.  However, the Plaintiffs' objection during closing did not ask the district court to provide a curative instruction directing the jury to only consider the evidence for impeachment purposes -- without a proper objection, we normally review for plain error.  See United States v. Billue, 994 F.2d 1562, 1567 (11th Cir. 1993) (holding that if a defendant failed to object or request a limiting instruction in district court, we review for plain error).[3]  Yet, even on appeal the Plaintiffs incorrectly argue that the 2012 criminal deposition was not in evidence at all, rather than arguing that it was in evidence only for impeachment purposes.

---

[3] To establish plain error, the defendant must show (1) an error, (2) that is plain, and (3) that affected his substantial rights. United States v. Turner, 474 F.3d 1265, 1276 (11th Cir. 2007). If the defendant satisfies these conditions, we may exercise our discretion to recognize the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings.  Id.

Because they failed to raise the argument about the potentially improper use of impeachment evidence before the district, <u>and</u> have not pressed this argument on appeal, they have abandoned this argument. <u>See</u> <u>Access Now</u>, 385 F.3d at 1330.

Finally, we reject Plaintiffs's claim that the district court erred in denying their motion for a continuance. We will not reverse a district court's ruling on a continuance motion unless the ruling is arbitrary, unreasonable, and severely prejudicial. <u>Sec. & Exch. Comm'n v. Levin</u>, 849 F.3d 995, 1005 (11th Cir. 2017). Here, Plaintiffs cannot show they suffered any prejudice from the district court's denial of the continuance. The evidence that came to light five days before trial was relevant <u>only</u> to the Plaintiffs' claims against the City of Naples, which had been dismissed about a month before the motion to continue. The newfound evidence therefore had no bearing on, and could not be the source of any prejudice concerning the claims against Bradshaw, which is what was litigated at trial.

Indeed, on appeal the only prejudice the Plaintiffs point to is the fact that the new evidence may have been relevant to the district court's reconsideration of its dismissal of the claims against the City. Yet this argument misapprehends the nature of a Fed. R. Civ. P. 12(b)(6) dismissal for failure to state a claim. As we've explained, "[s]uch a dispute always presents a purely legal question; there are no issues of fact because the allegations contained in the pleading are presumed to be true." <u>Chudasama v. Mazda Motor Corp.</u>, 123 F.3d 1353, 1367 (11th Cir. 1997).

It is for this reason that we've held that motions to dismiss for failure to state a claim should "be resolved before discovery begins."  Id.  Indeed, avoiding the imposition of discovery on facially implausible claims is one of the key functions of 12(b)(6).   Twombly, 550 U.S. at 558. The Plaintiffs' argument that "new evidence would affect the Court's prior ruling dismissing the City of Naples as a party" ignores the fact that the only thing relevant to the district court's dismissal of the claims against the City were the factual allegations made in the second amended complaint, not any evidence that may have subsequently come into the Plaintiffs' possession, whether through discovery or otherwise.  The district court properly concluded that there was no prejudice to the Plaintiffs by virtue of the late-acquired information about City police practices since the evidence was immaterial to any issue being litigated at trial, and was also not relevant to the Plaintiffs' subsequent motion for reconsideration.

**AFFIRMED.**